OPINION
Appellant Zachary Phillips appeals his conviction in the Common Pleas Court of Montgomery County for possession of crack cocaine, a violation of R.C. 2925.11 (A).
On December 19, 1997, at approximately 3:00 a.m., Deputy Scherer of the Montgomery County Sheriff's Office observed a running vehicle fail to proceed through an intersection during two separate traffic light cycles while on patrol near the intersection of Route 35 and Infirmary Road. He then parked behind the vehicle. After requesting back-up, Deputy Scherer approached the vehicle. He observed three individuals in the car who looked to him to be passed out or asleep.
Peering inside the vehicle, Deputy Scherer observed several empty forty (40) ounce beer bottles and what appeared to the butt of a firearm resting on the stomach of the rear passenger, Roosevelt Ellis. Deputy Scherer then reached into the vehicle to turn off the ignition and remove the keys. Meanwhile, Sergeant Brown, who had responded to the back-up call, retrieved the firearm from Ellis' person. The police officers then roused the driver, Donald Byrd, and Ellis, removed them from the vehicle and placed them into separate cruisers.
The police officers attempted to awaken Appellant, the remaining passenger in the vehicle, but were unsuccessful. Consequently, the police officers removed Appellant from the vehicle and attempted to stand him upright but he fell to the ground. The officers then reached into Appellant's pockets in an effort to secure identification or medical alert tag in an attempt to find out if Appellant had some kind of medical condition affecting his physical condition. In so doing, they discovered a plastic baggie containing what appeared to be crack cocaine in his right front pocket. The plastic baggie was taken by deputies and later submitted to the Miami Valley Regional Crime Laboratory for drug analysis., Appellant was arrested for disorderly conduct and was booked for drug abuse pending lab analysis of the suspected crack cocaine, but not formally charged. The following morning, at approximately 10:00 a.m., Detective Castle of the Montgomery County Sheriff's Office interviewed Appellant about the events of the night before. Before giving a statement to Detective Castle, Appellant was informed of his Miranda rights. He then signed and initialed a pre-interview form waiving those rights. After doing so, Appellant admitted he had been out with his friends, consumed a large quantity of alcohol, and smoked premo's, a combination of marijuana and crack cocaine. He also stated he had passed out and awoke in the presence of the sheriff's deputies. Following the interview, Detective Castle released Appellant from jail pending a laboratory analysis upon the suspected crack cocaine.
On December 3, 1998, Appellant was indicted on one count of possession of crack cocaine. On February 24, 1999, Appellant jointly filed suppression and dismissal motions. Appellant sought to suppress all evidence seized against him and all statements he made to police officers both before and after his arrest. He sought dismissal on the grounds that the nearly one year delay between his arrest and his indictment for drug possession prejudiced his ability to properly defend himself against the charge.
A hearing was held on these motions on July 15, 1999. The trial court overruled the motion to suppress on July 16, 1999 and the motion to dismiss on July 29, 1999. The trial court provided no written findings or conclusions of law in denying the defendant's suppression motion. However, in its Decision and Order on the Motion to Dismiss, the trial court explained its reasons for overruling Appellant's motion to dismiss:
"The defendants claim that the delay 11 months in being indicted has materially prejudiced their ability to defend themselves. As a factor, the death of the owner of the car, is claimed as a prejudice to the defense.
 However, there was no showing that he was a witness to the incident or that he had information helpful to the defense of the defendants. Counsel speculated as the possibility of Renado Hunter's [the owner of the car] testimony. This is mere speculation. As the availability of Donald L. Byrd, the driver of the car, the vehicle inventory form shows a specific address in Columbus, Ohio and a witness testified Mr. Byrd still lives in Columbus, Ohio and some persons in Dayton know of his whereabouts in Columbus, Ohio. Again, there is no showing of the unavailability of this person or what effect any delay would have on his testimony."
On September 9, 1999, Appellant entered a no contest plea to one count of possession of crack cocaine. On October 14, 1999, he was sentenced to two years of incarceration and his driver's license was suspended. This timely appeal followed., Appellant assert three assignments of error:
 I. THE TRIAL COURT ERRED IN FAILING TO SUPPRESS APPELLANT'S ORAL STATEMENT, AS THE STATE FAILED TO CARRY ITS BURDEN TO PROVE THAT HIS WAIVER OF MIRANDA RIGHTS AND STATEMENT WERE MADE KNOWINGLY, VOLUNTARILY AND INTELLIGENTLY.
 II. APPELLANT WAS DENIED HIS RIGHTS PURSUANT TO THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION THROUGH INEFFECTIVE ASSISTANCE OF COUNSEL.
 III. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL, PURSUANT TO THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND SECTION 10, ARTICLE 1, OF THE OHIO CONSTITUTION, AS WELL AS OHIO REVISED CODE SECTION 2945.71.
 I.
Under his first assignment of error, Appellant argues the State failed to prove by a preponderance of the evidence that he knowingly, voluntarily, and intelligently waived his Miranda
rights and made an incriminating statement about himself. Appellant contends the State did not prove he was not still under the influence of drugs and alcohol at the time he waived hisMiranda rights. Appellant also alleges that the State failed to address the issue of whether he was improperly induced to admit to using drugs and alcohol to Detective Castle in exchange for Castle signing a Detective Release Form that would permit Appellant to be released from custody. The State answers the Appellant's first argument by pointing out that there is no evidence in the lower court record to suggest Appellant was impaired at the interview wherein he waived his Miranda rights. In response to Appellant's second argument, the State contends there is no evidence in the record to show Detective Castle coerced Appellant into making his statement with the promise of release from jail in exchange for Appellant's cooperation in making the statement.
The trial court assumes the role of the trier of fact in a hearing on a motion to suppress. State v. Thompson (1995),103 Ohio App.3d 498, 502; State v. Rossiter (1993), 88 Ohio App.3d 162,166. The trial court must determine the credibility of the witnesses and weigh the evidence presented at the hearing.Rossiter, supra at 166.
A reviewing court will not disturb the trial court's findings of fact so long as they are supported by competent, credible evidence. Thompson, supra at 502; Rossiter, supra at 166. Accepting the trial court's findings of fact as true, an appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard. Thompson, supra at 502; Rossiter,supra at 166.
Voluntary waiver of Miranda rights and a voluntary confession are separate legal issues. State v. Moore (1998), 81 Ohio St.3d 22,31; State v. Clark (1988), 38 Ohio St.3d 252, 261. The burden of proof in both inquiries, however, is the same. The burden is on the prosecution to prove by a preponderance of evidence that a defendant waived his Miranda rights voluntarily, knowingly, and intelligently. Colorado v. Connelly (1986), 479 U.S. 157, 168,107 S.Ct. 515, 522, 93 L.Ed.2d 473, 485. The burden is also on the prosecution to prove by a preponderance of the evidence that a defendant's confession is voluntary. Lego v. Twomey (1972),404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618, 627.
The analysis is also the same in both inquiries. The test is whether the actions are voluntary under the totality of the circumstances, "including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v.Smith (1991), 61 Ohio St.3d 284, 288 quoting State v. Barker
(1978), 53 Ohio St.2d 135, paragraph two of the syllabus; Clark,supra at 261.
The totality of the circumstances analysis is triggered by evidence of police coercion. Clark, supra at 261. "[C]oercive police activity is a necessary predicate to the finding" that a suspect involuntarily waived his Miranda rights and involuntarily confessed. Connelly, 479 U.S. at 167, 107 S.Ct. at 522,93 L.Ed.2d at 484. A suspect's decision to waive his Miranda rights and to make a confession are made voluntarily absent evidence that "his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct."Colorado v. Spring (1987), 479 U.S. 564, 574, 107 S.Ct. 851, 857,93 L.Ed.2d 954, 966 ; Moore, supra at 32; State v. Dailey (1990),53 Ohio St.3d 88, 91.
The suspect's impaired mental condition at the time of the waiver and the confession has some bearing on the issue of the voluntariness but only as to whether police officers deliberately exploit the suspect's mental condition to coerce the waiver and confession. Connelly, 479 U.S. at 164, 93 L.Ed.3d at 486; Statev. Nobles (1995) 106 Ohio App.3d 246, 279. In Nobles, the defendant had taken the prescription narcotic Xanax nearly twelve hours before admitting to police she had drowned her son and claimed she was still under the influence of the drug when she confessed. Id. at 278. We held, as a matter of law, that her confession was voluntary when there was no evidence to show the police officers deliberately took advantage of her alleged impaired state to coerce her into confessing. Id. at 278.
In the present case, like Nobles, there is nothing in the record to support the conclusion that the police officers deliberately exploited Appellant's alleged impaired state to coerce him into waiving his Miranda rights and admitting to using drugs. Appellant was clearly in an impaired state when the Dayton police officers arrested him up at three in the morning. However, there is no evidence to indicate he was still impaired during the 10:30 a.m. interview with Detective Castle, when he waived hisMiranda rights and admitted to using drugs. Assuming arguendo
Appellant was still under the influence of drugs and alcohol at the time of the interview, there is no evidence to show that Detective Castle took advantage of Appellant's impaired mental state to coerce him into waiving his Miranda rights and making a self-incriminating statement. Appellant urges us to consider Detective Castle's testimony that Appellant would be held in custody until a Detective Release form was signed. Detective Castle only signed this form after Appellant made a statement admitting to using drugs the night before. Appellant argues the prosecution had to show he was not improperly induced by the promise of release from custody into waiving his Miranda rights and confessing. This argument is without merit because there is no evidence in the factual record below to indicate Detective Castle told Appellant at any time during the interview he would be released if he cooperated by waiving his Miranda rights and making incriminating statements.
Thus, there is no evidence to show Detective Castle exploited Appellant's alleged impaired state to coerce him into waiving hisMiranda rights and admitting to using drugs. There is, in fact, evidence to support the conclusion that Appellant voluntarily waived his Miranda rights. Appellant signed the waiver form, which is strong proof that the waiver was valid. North Carolinav. Butler (1979), 441 U.S. 369, 274-275, 99 S.Ct. 1755, 1758-1759,60 L.Ed.2d 286, 293; Moore, supra at 32.
We conclude the prosecution sustained its burden to prove by a preponderance of the evidence Appellant voluntarily waived hisMiranda rights and admitted to using drugs. Accordingly, we overrule Appellant's first assignment of error.
 II.
Under his second assignment of error, Appellant argues he was denied effective assistance of counsel because his trial counsel failed to cross-examine the State's witnesses about whether he voluntarily, knowingly, and intelligently waived his Miranda
rights and made self-incriminating statements. Appellant reasons that since failure to pursue a motion to suppress implicating matters critical to the defense often constitutes ineffective assistance of counsel, it follows that failing to raise critical issues on cross-examination at the motion hearing should also constitute ineffective assistance of counsel. Specifically, Appellant argues his trial counsel should have cross-examined Detective Castle with Castle's police report which indicated: "Mr. Phillips was unaware of having any crack cocaine on his person." Unfortunately Detective Castle's report is not part of the record below and cannot be considered by this court in addressing this assignment of error.
In response, the State contends that there is no evidence in the record to support Appellant's contention that he involuntarily waived his Miranda rights and made self-incriminating statements.
To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that, in light of all the circumstances, counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692; State v. Madrigal
(2000), 87 Ohio St.3d 378, 388-389. To establish the requisite prejudice, the defendant must show that there is a reasonable probability, a probability sufficient to undermine confidence in the outcome, that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland,466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 699. A court reviewing a claim of ineffective assistance of counsel "must indulge in the presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland,466 U.S. at 692, 104 S.Ct. at 2065, 80 L.Ed.2d at 694-695; Statev. Sallie (1998), 81 Ohio St.3d 673, 674. To overcome the presumption, the defendant must show that counsel made errors so serious that counsel failed to function as counsel guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 692,104 S.Ct. at 2067, 80 L.Ed.2d. at 696., Appellant has failed to demonstrate that his trial counsel was "deficient" in his representation of him at the suppression hearing. Therefore, Appellant's second assignment of error is overruled.
 III.
Under his third and final assignment of error, Appellant argues he was denied his constitutional right to a speedy trial because he was indicted for possession of a controlled substance nearly a year after he was arrested and charged with disorderly conduct. As a result of the delay, Appellant claims his right to a fair trial was compromised. Detective Comer, one of the police officers who arrested Appellant, could not recall certain details of the arrest and his lack of memory, Appellant argues, hindered effective cross-examination on the legality of the search of Appellant at the site of the arrest. According to Appellant, Detective Comer could not recall whether or not he observed a wallet in Appellant's back pocket and could not recall whether or not he asked the other two occupants of the vehicle for Appellant's identity or information relating to his physical condition at the scene of the arrest., Appellant also claims he was prejudiced by the pre-indictment delay because two of his potential witnesses were unavailable to testify by the time of the trial. The owner of the car had died in the interim between the arrest and the hearing and the driver's whereabouts were unknown at the time of the indictment.
The State counters by arguing Appellant fails to demonstrate he suffered actual, substantial prejudice because of the pre-indictment delay.
The Sixth Amendment's speedy trial guarantee does not apply to pre-indictment delays. United States v. Marion (1971),404 U.S. 307, 313, 92 S.Ct. 455,459, 30 L.Ed.2d 468, 474. The speedy trial guarantee of Section 10, Article 1 of the Ohio Constitution does not apply to pre-indictment delays. State v. Luck (1984),15 Ohio St.3d 150, 153. A suspect can claim, however, that his due process rights were violated because of the delay between his arrest and indictment. Marion, 404 U.S. at 325, 92 S.Ct. at 466,30 L.Ed.2d at 481.
In order to succeed on a claim of due process violation, the defendant must first show he suffered actual, substantial prejudice because of the delay. United States v. Lovasco, (1977),431 U.S. 783, 790, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752, 759; Statev. Whiting (1998), 84 Ohio St.3d 215, 217. Upon a such showing, the burden then shifts to the State to prove the reasons for the delay outweigh the prejudice suffered by the defendant. Whiting,supra at 217.
We agree with the State and the lower court that Appellant is unable to show his case was prejudiced by the pre-indictment delay. Any details of Appellant's arrest Detective Comer failed to recall on the stand were not relevant to the issue of Appellant's conviction. The death of the owner of the car did not in any way prejudice Appellant's defense; as the trial court pointed out, "there was no showing he [the owner of the car] was a witness to the incident or that he had information helpful to the defense of the defendant." As for Appellant's claim that Donald Byrd was unavailable as a witness because his whereabouts were unknown, there is evidence in the lower court record to refute that contention. The vehicle inventory form showed a specific address for Byrd in Columbus and a witness testified that Byrd still lives in Columbus and some people knew of his whereabouts in Columbus. Furthermore, Appellant was unable to show "what effect any delay would have had" on Byrd's testimony. As Appellant suffered no actual, substantial prejudice from the pre-indictment delay, his third assignment of error is overruled.
 ____________________ BROGAN, J.,
WOLFF, J., and YOUNG, J., concur.